James H. ELLIS, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

Alfred M. WATKINS, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 21918, 21919.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 13, 1968.
Decided April 30, 1969.

Mr. Charles E. Kern, II (appointed by this court), for appellants, and Mr. Richard J. Hopkins, Washington, D. C., for appellant in No. 21,919. Mr. George W. Mitchell, Washington, D. C., also entered an appearance for appellant in No. 21,-919.

Mr. Frederick G. Watts, Atty., Department of Justice, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. James A. Treanor, III, Asst. U. S. Atty., also entered an appearance for appellee in No. 21,919.

Before DANAHER,* WRIGHT and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

These appellants were convicted of arson and of carrying a dangerous weapon. They seek reversal on the ground that the trial judge erred in compelling the testimony of one Izzard who had been their companion in crime.

* Circuit Judge Danaher became Senior Circuit Judge on January 23, 1969.

The prosecution called Izzard to testify at trial, whereupon the trial judge advised the witness of his privilege against self-incrimination, and asked him if he wished to take the stand. The witness responded in the negative. The prosecuting attorney asked that counsel be appointed to advise the witness. Counsel was appointed; he consulted the witness, and reviewed the transcript of the grand jury proceedings at which the witness had already testified, and he advised the witness to claim his privilege.

Thereafter a long colloquy ensued among court and counsel. The prosecutor urged that the witness should be compelled to testify based on his prior waiver of the privilege at the grand jury proceedings. He argued that there could be no prejudice if the witness merely reiterated what he had already said for the record, and that the standard for waiver under the Supreme Court decisions was that there had to be an actual, realistic possibility of harm.

Government counsel also urged that the defendants had no standing to object to the ruling on the claim of privilege of a witness, and that there could be no prejudice to the witness, if the court erroneously compelled the testimony, in view of Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), and other Supreme Court decisions. In opposition counsel for witness Izzard contended that there was some doubt in Izzard's mind as to whether he was being charged or under investigation, etc. at the time he testified before the grand jury, and thus he had not waived his privilege there, and that in any event he had not been given immunity and thus could reclaim the privilege at the subsequent proceeding.

The trial judge rejected outright the Government's contention that the waiver of privilege before the grand jury carried through to a subsequent proceeding, and subscribed to the rule announced in other circuits, even though there was no binding precedent from this court. He concluded, however, that there was no reason not to compel the testimony, since, under his reading of Murphy v. Waterfront Comm'n, *supra*, the witness would be protected from its subsequent use against him.[1]

On appeal Government counsel invoke the doctrine that a party may not appeal because of the court's alleged error in overruling the claim of privilege of a witness who is not a party.[2] We hold that while this doctrine has vitality, it does not bar review of the action complained of here. For convenience we defer development of this ruling upholding

---

1. The Court: Well, with respect to the witness having testified before the Grand Jury, at that time there was a valid waiver of his privilege that he exercised in testifying before the Grand Jury.

That, however, does not carry over to any waiver pertaining to any subsequent testimony, as, for example, the testimony that would be given in the course of this trial.

The law is clear at present that testimony by a witness to the Grand Jury is not a waiver that carries over to testimony as the trial of the action.

The Court is of the opinion that this matter, however, should be resolved in terms of the holding of the Supreme Court in the Murphy case, Murphy against the Waterfront Commission, and although the testimony of the witness before the Grand Jury does not work a waiver insofar as his testimony in the course of this trial, all threat of prosecution as a result of his testimony in the course of this trial has been removed by virtue of * * * the Murphy case, which very clearly states that exercising either a supervisory function over the Federal courts or by the Court's interpretation of the Constitution, his testimony or any of the fruits thereof given in the course of this trial could not be used in a subsequent prosecution for any offense connected with the matter presently on trial.

Therefore, under those circumstances the witness will be required to take the stand and he will be required to testify in the course of this action under the threat of criminal contempt. Tr. 68–70.

2. Long v. United States, 124 U.S.App.D.C. 14, 19, 360 F.2d 829, 934 (1966); Bowman v. United States, 350 F.2d 913, 916 (9th Cir. 1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966).

appellants' standing to Part B of this opinion, since it will involve consideration of the material presented in Part A.

As to the merits, we hold (in Part A) that the trial judge erred when he required the witness to testify on the ground that the witness was protected against prejudice by virtue of Murphy v. Waterfront Comm'n. We further hold (in Part C) that there was validity in the prosecutor's contention that the claim of privilege asserted at trial should be overruled in view of the witness's voluntary testimony before the grand jury, and that the judge erred in rejecting this contention, and accordingly affirm since we see no valid basis for Izzard's disavowal of his waiver before the grand jury.

A. *The trial judge's ruling compelling the witness to testify was based on an approach beyond his judicial authority.*

1. As to the merits, we begin by saying we agree with the assumption of the trial judge that a witness compelled by a judge to testify over a claim of privilege will be protected under the doctrine of Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594 (1964). While the

matter is not free from doubt, the thrust of *Murphy* and other recent Supreme Court decisions serves to protect the witness.

Appellant Murphy had been held in civil contempt for his refusal to answer questions before a state investigating commission. Murphy argued that the immunity conferred by the state immunity statute was not coextensive with his privilege, since the answers might incriminate him under federal law and lead to federal prosecution.[3] All the Justices agreed that the threat of prosecution by a coordinate sovereign whittled away at the policy underlying the privilege and concurred in holding, on different doctrinal grounds, that federal officials would not be permitted to use the testimony or initiate prosecution based on the disclosure or its fruits.[4]

In *Murphy* the order to testify was preceded by a grant of immunity pursuant to statute. What of a case where there is compulsion by a judge in the absence of an immunity statute, by an order that erroneously overrules the witness's claim of privilege? We think the witness is protected by the approach and principle underlying *Murphy*. See

---

3. Settled Fifth Amendment doctrine is that immunity conferred by statute must be "coextensive" with the privilege it seeks to displace. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). Protection under an immunity statute must extend to any prosecution based on the testimony, as well as its actual use at trial. *See, id.* It must extend to all possible indictments, and not merely to one for an offense under investigation. *See, id.* at 562, 563–564, 585–586, 12 S.Ct. 195.

Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594 (1964), protected the witness against the use of testimony or its fruits. In Stevens v. Marks, 383 U.S. 234, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966), both Justice Douglas and Justice Harlan noted that it was an open question whether the witness' immunity might not also preclude prosecution based on "independent" evidence. (*See* pp. 244, 250, 86 S.Ct. 788.)

4. The analogous problem does not seem to arise under the basic federal immunity

statute, 18 U.S.C. § 3486 (Supp. III, 1968), which authorizes grants of immunity to obtain information about matters involving the national security. Subsection (a) provides:

* * * No * * * witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is so compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding against [the witness] * * * in *any* court. (Emphasis added)

*See* Adams v. Maryland, 347 U.S. 179, 74 S.Ct. 442, 98 L.Ed. 608 (1954); Brown v. Walker, 161 U.S. 591, 606, 16 S.Ct. 644, 40 L.Ed. 819 (1896); *see also* Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960), construing the similar language of the Narcotics Control Act of 1956, 18 U.S.C. § 1406 (1964).

*also* Garrity v. New Jersey, 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), both the majority opinion of Justice Whittaker (p. 355, 78 S.Ct. 311) and Justice Harlan's dissent (p. 363, 78 S.Ct. 311); and Adams v. Maryland, 347 U.S. 179, 181, 74 S.Ct. 442 (1954).[5] The Wigmore text also expresses the view that such a court ruling protects the witness.[6]

■ 2. A trial judge cannot reject a witness's claim of privilege merely on the ground that the ruling cannot hurt the witness because it will establish an immunity from subsequent prosecution.

We are not here concerned with a case where a judge has made a mistake in applying legal rules, like a case where he erroneously rules that a witness has waived his privilege. In the case before us the judge did not purport to deny that the witness had correctly presented a claim of privilege. He merely asserted that the witness would nevertheless be protected, by *Murphy*, against prosecution based on his testimony.

■ The ruling was made by an able and conscientious trial judge. We are confident it was made in good faith, and can even discern how the judge may have come to a mis-reading of *Murphy*. Nevertheless, his ruling was in the nature of a circular, self-fulfilling prophecy that in substance can only be viewed as a grant of immunity. That ruling was outside the scope of judicial authority.

This is an area that has been considered by Congress and where it has acted with care and particularity, limiting the power to grant immunity—in the presence of a valid claim of privilege—to a limited group of federal officials.[7] We

5. While the point is dictum, the Court in *Adams* stated (347 U.S. at 181, 74 S.Ct. at 445):
> Indeed, a witness does not need any statute to protect him from the use of self-incriminating testimony he is compelled to give over his objection. The Fifth Amendment takes care of that without a statute.

*See also* Bowman v. United States, *supra* note 2.

6. *See* VIII Wigmore, Evidence (McNaughton rev. 1961) § 2270 at 418–419:
> Where the witness has properly made his claim of privilege and it has been erroneously overruled, evidence of his testimony is inadmissible against him in any subsequent proceeding. · While such erroneously compelled disclosure does not immunize the witness against prosecution for any crime to which the disclosure relates, there are dicta in the opinions supporting the proposition that it may render inadmissible any "fruit of the poisonous tree."

If we read this aright, Wigmore is pointing out that the witness is subject to prosecution—but only on the basis of independent evidence that is not tainted.

7. Section 3486 of title 18, set forth in part, *supra* note 4, provides in pertinent part:
> (c) Whenever in the judgment of a United States attorney the testimony of any witness [or other specified kinds of evidence], in any case or proceeding before any grand jury or court of the United States involving any violation of section 1751 of title 18 [Presidential assassination, kidnapping, or assault] of the United States Code, or involving any interference with or endangering of, or any plans or attempts to interfere with or endanger, the national security or defense of the United States by treason, sabotage, espionage, sedition, seditious conspiracy [or in other manners specifically enumerated herein], and conspiracies involving any of the foregoing, *is necessary to the public interest, he, upon the approval of the Attorney General,* shall make application to the court that the witness shall be instructed to testify * * *. (emphasis added)

*See* Justice White's concurring opinion, Murphy v. Waterfront Comm'n, *supra*, 378 U.S. at 99, 84 S.Ct. 1594.

For a collection of federal immunity statutes *see* Comment, The Federal Witness Immunity Acts in Theory and Practice: Treading the Constitutional Tightrope, 72 Yale L.J. 1568, 1598–1610 (1963). Government officials responsible for law enforcement have expressed grave reservations about the practice of allowing congressional committees to confer immunity. *See* Brownell, Immunity From Prosecution Versus Privilege Against Self-Incrimination, 28 Tul.L.Rev. 1 (1953), and Congress has itself been chary of binding the Executive and undercutting its discretion to prosecute. *See* 99 Cong. Rec. 4737–4740, 8342–8343; H.R.Rept.

need not consider what would be the legal situation in the absence of such a statute.[8] With that statute on the books, the power to grant immunity is plainly outside the judicial province.

This conclusion, once stated, seems obvious. But if authority is also desired, it appears, at least implicitly, in Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). Justice Frankfurter, writing for seven Justices, rejected appellant's contentions that the federal immunity statute required the court to participate in the decision as to whether immunity should be granted in a particular situation. The Court approved the approach of the district court, in construing the statute to avoid a serious constitutional question as to the role of the judiciary under the doctrine of separation of powers, and found a limited judicial role under the statute, 18 U.S.C. § 3486 (1964).[9] See 350 U.S. at 434, 76 S.Ct. at 504:

Since the Court's duty under § (c) is *only* to ascertain whether the statutory requirements are complied with by the grand jury, the United States Attorney, and the Attorney General, we have no difficulty in concluding that the district court is confined within the scope of "judicial power." (Emphasis added)

The lack of judicial authority to grant immunity from prosecution to a witness whose claim of privilege is recognized also appears in opinions of this court. See Earl v. United States, 124 U.S.App. D.C. 77, 80, 361 F.2d 531, 534 (1966), cert. denied, 388 U.S. 921, 87 S.Ct. 2121, 18 L.Ed.2d 1370 (1967);[10] In re Bart,

---

No. 2606, 83d Cong., 2d Sess. (1954), U. S.Code Cong. & Admin.News, p. 3062, considering the 1954 immunity legislation, 18 U.S.C. § 3486 (1964), and noting "The power to grant immunity is one of tremendous responsibility. * * * All possibility of abuse must be obviated lest it become a loophole for the escape of punishment of the guilty. It must at all times be the perfect medium whereby a true balance between the need and right of the Government to obtain necessary information to carry out its constitutional functions and the constitutional right of an individual not to incriminate himself." *Id.* at 5. Congress was particularly troubled lest witnesses obtain so-called "immunity baths," immunity from the mere fact of testifying. Thus, the Committee emphasized the careful procedures under the Act which would give the Attorney General notice of the witness's intent not to testify and an opportunity to obtain information upon which "to predicate a wise decision as to whether or not immunity should be granted."

8. At least one court has claimed the power to confer immunity even in the absence of statute, and two jurisdictions have conferred on courts the power by legislation. See C. McCormick, Handbook of the Law of Evidence (1954) at § 135, at 284.

9. The issue was articulated at greater length by Judge Weinfeld in In re Ullmann, 128 F.Supp. 617, 624 (S.D.N.Y. 1955):

[It is urged] that the [federal immunity] act is unconstitutional in that it

requires the court to perform a non-judicial function. * * * that the court is called upon to approve the application for the grant * * *. Thus [it is urged] that the ultimate determination of whether immunity should be granted * * * rests with the court, thereby requiring it to exercise a power that is exclusively either legislative or executive; that for the court to make such determination does violence to the separation of powers * * *.

At the time § 3486 was debated in 1953, a major concern of the Congress was the power accorded to the Congress to grant immunity for investigative purposes of the legislature. The uneasiness of some legislators on this score reflected a concern and awareness that the Act might upset "our tripartite system of government," since the law enforcement powers are lodged exclusively in the executive. *See* 99 Cong.Rec. 8342–8343, 83d Cong., 1st Sess. (1953) (remarks of Senator Lehman). The judicial branch must also respect this tripartite division of functions.

10. We have no occasion here to consider the consequence of a failure to provide immunity to an exculpating witness called by the defense. In Earl v. United States, four judges voted for rehearing en banc, *see* 124 U.S.App.D.C. 273, 364 F.2d 666 (1966), noted, Right of a Criminal Defendant to the Compelled Testimony of Witness, 67 Colum.L.Rev. 953 (1967). The ultimate issue raised by their statement was whether in the absence of im-

113 U.S.App.D.C. 54, 304 F.2d 631 (1962) (by implication).

### B. Appellants have standing to object to the judge's usurpation of prerogative.

We do not entertain this appeal merely to review an erroneous ruling on a claim of testimonial privilege. Here there was a usurpation of a prerogative that Congress has withheld from the courts.

We must look to the substance and not the form of the ruling. What appears to be a mere ruling on a claim of privilege is, "in reality and effect," [11] an action tantamount to exchanging immunity for the witness's testimony. If the trial court had been ruling that the witness erred in presenting a claim of privilege the question would simply be whether the judge was correct. But by "resolving [the issue] in terms of the Murphy case," the trial court agreed that the witness was quite right in raising the claim of privilege, that he would be deprived of protection to which he was entitled if he testified without asserting the claim of privilege. And then the court in effect asserted the authority of the judiciary to compel testimony simply because the witness would be protected in the future by virtue of the court's compulsion.

The propriety of such an action by a judge raises serious questions concerning the power of courts and the limitations on their proper role in the administration of justice.[12] The issue raised by the District Court's ruling goes to the distribution of power among the three coordinate branches of Government. This is the kind of issue that is so fundamental that appellate courts are constrained to consider and grant extraordinary writs, if necessary, in order to obviate the extra-judicial encroachment.[13] The appellate function embraces a correction in the particular case and deterrence against future repetition.[14]

The need for a stern restraint on judges to stay within the judicial province is a proper basis for extraordinary appellate consideration—in some cases, as already noted by mandamus; and in the case before us by recognizing a limited exception to a general rule on standing to raise questions.[15] In this area

---

munity (for a defense witness) the conviction was compatible with a fair trial. It was suggested in their statement, e.g., that the situation may at least have called for an ameliorating instruction.

11. See Ex parte United States, 287 U.S. 241, 250, 53 S.Ct. 129, 132, 77 L.Ed. 283 (1932), where the Court said that a refusal to issue a bench warrant for lack of probable cause after a grand jury indictment is "in reality and effect, a refusal to permit the case to come to a hearing * * *." See also Ex parte United States, 242 U.S. 27, 41–42, 37 S.Ct. 72, 61 L.Ed. 129 (1916).

12. Compare Ex parte United States, supra note 11, 242 U.S. 27, 37 S.Ct. 72.

13. Compare Ex parte United States, 242 U.S. 27, 41–42, 51–52, 37 S.Ct. 72 (1916), where the Court held that the persistent refusal to impose sentences for an offense was an abuse of judicial discretion that amounted to a usurpation of legislative power, and was subject to review and remedy by mandamus.

14. See United States v. Dooling, Second Circuit, 1969, 406 F.2d 192, where the court issued a mandamus to block a district court's dismissal of an indictment after trial. Judge Lumbard's opinion referred to the court's "responsibility for preventing gross disruption in the administration of criminal justice." It stated that extraordinary relief was appropriate since the trial court's action was "so highly improper and undesirable" that "to acquiesce in [such] unprecedented action would be to encourage the use of similar procedures by the district court in the future."

15. The need for prompt appellate determination of an important and unsettled question of law has been held a relevant consideration in creating an exception to established procedural rules, such as the "final judgment" rule. See MacAlister v. Guterma, 263 F.2d 65, 67 (2d Cir. 1958):

[A question of first impression] has been presented to a federal appellate court. In view of this state of affairs direction from an appellate court would define powers in an area presently uncertain and indeed insure uniform treatment and consistency in approach within this circuit.

there is a particular call for undertaking the task of clarification of the law that is part of the "expository and supervisory functions of an appellate court." *See* Will v. United States, 389 U.S. 90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 308 (1967); Smuck v. Hobson, 132 U.S.App.D.C. 372, 408 F.2d 175, 1969.[16] We must not hesitate to exercise this delicate function, provided our action is consistent with the constitutional limitations embodied in the "case or controversy" clause and rules prescribed by Congress.

■■■ Ordinarily a defendant does not have standing to complain of an erroneous ruling on the scope of the privilege of a witness. That principle most recently announced by this court in *Long*, is not modified by our opinion today.[17] But a defendant does have standing, we hold, to complain that his conviction was obtained in a case where the trial judge went outside his judicial province to grant immunity to a witness. We sustain his standing on the basis of the principle recognized in such cases as Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), and Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).[18] *See also*, Berger v. New York, 388 U.S. 41, 55, 104, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).

In Barrows v. Jackson, the Supreme Court recognized that the principle disclaiming standing to raise the rights of third persons who were non-parties was subject to important exceptions, stating (346 U.S. at 257, 73 S.Ct. at 1035):

> Under the peculiar circumstances of this case, we believe the reasons which underlie our rule denying standing to raise another's rights, which is only a rule of practice, are outweighed by the need to protect the fundamental rights which would be denied by permitting * * * the action to be maintained. * * *
>
> In * * * unique situations which have arisen in the past, broad constitutional policy has led the Court to proceed without regard to its usual rule.

On this point *Barrows* is in good standing.[19]

In the case before us that principle leads to according standing to present the constitutional issues—focused as they are in the paramount need for adherence to limitations of judicial power—when presented through the only meaningful channel available. Although the "peculiar circumstances" of *Barrows* are different on the facts the essential principle is the same. *Barrows* is not distinguishable simply because the questions presented here could have been

---

16. In Smuck v. Hobson, *supra*, this court has recognized "the relevance of substantial and unsettled questions of law" to the determination to permit "intervention to perfect an appeal."

17. Our *Long* decision accords with the prevailing rule that a party may not object to a ruling adverse to a testimonial privilege unless the party is the holder of the privilege. *See, e.g.*, Bowman v. United States, *supra* note 2; Sachs v. Government of the Canal Zone, 176 F.2d 292, 296 (5th Cir.), cert. denied, 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525 (1949); Morgan v. Halberstadt, 60 F. 592, 596–597 (2d Cir.), cert. denied, 154 U.S. 511, 14 S.Ct. 1149, 38 L.Ed. 1078 (1894); *see generally*, VIII Wigmore, *supra* note 6, § 2270 at 416–417; Annot., Right of One Against Whom Testimony is Offered to Invoke Privilege of Communication Between Others, 2 A.L.R.2d 645 (1948);

Note, Persons Entitled to Waive or Claim Privileges as to the Admission of Testimony, 30 Colum.L.Rev. 686, 689–694 (1930).

18. In *Griswold* the Supreme Court granted standing to the defendant to assert that the criminal statute involved in his prosecution was invalid because of its interference with the constitutional rights of *other persons*. The Court concluded that Griswold's case was the only meaningful channel for presenting the constitutional violation (*see* 381 U.S. at 481, 85 S.Ct. 1678).

19. *Barrows* was recently cited with approval in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Thus *Alderman* both asserted the principle denying general standing to present the claims of another and recognized the existence of exceptions like *Barrows*.

raised by Izzard had he chosen to risk contempt and appeal from the resulting order. We must focus on realities, not formalities. *Cf.* Mills v. Alabama, 384 U.S. 214, 217, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966). The reality is that the self-fulfilling nature of the District Court's ruling effectively eliminated Izzard from the action below. It would be unrealistic to project that an appeal could or might have been lodged by a witness who was wronged, since the ruling gives him de facto protection and resistance would expose him to possible punishment for contempt, at a minimum, and to the risk of antagonizing the prosecutor.[20] As in *Barrows* the issue on this appeal would likely be effectively foreclosed from review if we do not "proceed without regard to [the] usual rule."

We repeat that this opinion does not modify the rule of *Long* for the broad areas of issues, where what is involved is an alleged error on an evidentiary question, or in definition whether the witness properly raised a claim to protection. But in this case, where the trial judge did not disagree with the witness's claim of right to protection, but proceeded by an action that was tantamount to granting immunity, we conclude that a defendant adversely affected in fact has standing to bring such departure from the judicial province to the appellate court for review and correction.

C. *The privilege against self-incrimination cannot be claimed at trial by a witness who has voluntarily testified, before the grand jury which returned the indictment, without invoking the privilege.*

In our view a witness who voluntarily testifies before a grand jury without invoking the privilege against self-incrimination, of which he has been advised, waives the privilege and may not thereafter claim it when he is called to testify as a witness at the trial on the indictment returned by the grand jury, where the witness is not the defendant, or under indictment.

While the prevailing rule is that a waiver of Fifth Amendment privilege at one proceeding does not carry through to another proceeding,[21] there appears to be no controlling authority in this circuit. We think that rule unsound, at least for the circumstance before us, and decline to adopt it.[22]

[10] Although numerous policies have been advanced to explain and support the privilege against self-incrimination,[23] the paramount interest that is protected is the right to remain silent rather than make disclosures that may in fact lead to prosecution. When prosecution is barred for some reason, no privilege exists. Witnesses are compelled to speak when jeopardy has attached, the statute of limitations has run, a pardon has been granted, or adequate immunity conferred.[24] The rationale for these

---

20. *Compare* Dike v. Dike, 75 Wash.Dec. 2d 1, 448 P.2d 490 (Dec. 5, 1968), where the court points out that any attorney ordered to testify over a claim of attorney-client privilege does have an incentive to test the ruling by taking contempt. An attorney has a moral duty, a professional standing to maintain and the expectation that the contempt proceeding will be formal in nature.

21. *See generally*, C. McCormick, Handbook of the Law of Evidence § 130, at 274 (1954); VIII Wigmore, *supra* note 6, § 2276, at 470. For a discussion of the cases, *see infra.*

22. "We may as well disregard the weight of authority elsewhere and start with a rule of our own, consistent with practical experience." Quoted in Jones v. United States, 119 U.S.App.D.C. 284, 289, 342 F.2d 863, 868 (1964) (en banc).

23. For a collection of the views of judges and scholars on the policies underlying the privilege, *see* VIII Wigmore, *supra* note 6, § 2251, at 295–318.

24. *See* Ullmann v. United States, *supra; see also* Brown v. United States, 359 U. S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), where a majority of the Court specifically reaffirmed *Ullman. Brown*, although overruled on other grounds, re-

holdings is that the witness's disclosure cannot prejudice him since he is no longer subject to prosecution.

Once a witness has voluntarily spoken out, we do not see how his protected interest is jeopardized by testifying in a subsequent proceeding, provided he is not required to disclose matters of substance which are unknown to the Government. We see "no real danger of legal detriment" arising out of a second disclosure. *Compare* Rogers v. United States, 340 U.S. 367 at 373, 71 S.Ct. 438, 95 L. Ed. 744. In short we agree with Professor McCormick's criticism of the prevailing rule:

> A mechanical rule has been placed upon the application of [the] doctrine of waiver. * * * Consequently, a witness * * * who freely testifies before the Grand Jury * * * when called as a witness at the trial * * * may claim the privilege. * * * The rule * * * protects chiefly the person accused of crime, and gives very little protection to the witness. If he has already given material evidence of his own guilt, such evidence, in the form of a transcript of his testimony, or of a signed affidavit, can readily be proved against him if he is tried for the crime. The present testimony [i. e. second disclosure] will not add to

his hazard except as additional facts or details are brought out.[25]

The rule we think sound is like the rule put forward in the Restatement and the proposed Uniform Rules of Evidence.[26]

The community's interest in law enforcement is a fundamental basic concern of our country, for freedom and security are intertwined. That interest cannot be used to justify trampling on the Constitution. The need for "intelligent and effective law enforcement" is, however, rightly taken into account in defining the scope of constitutional protections.[27] Those protections are not to be extended by "mechanical rules" that serve no meaningful freedom, but interfere with and hamper sound law enforcement.

It would impede sound law enforcement if an implicated but cooperating witness can decide, after he has made disclosure to the grand jury, that he will refuse to testify at trial. The Government may have structured its case around this witness, and be unable at a late hour, often after jeopardy has attached, to recast an investigation. Leads that might have been explored in the past, with expenditure of much money and time, and were put aside with this witness's cooperation, may now be lost beyond retrieval. The witness may have obtained an effective immunity for him-

---

mains good authority on this point and has been recently cited approvingly for its holding on the issue of the validity of an immunity statute. *See* Katz v. United States, 389 U.S. 347, 349, 88 S.Ct. 507, 19 L.Ed.2d 576 n. 3 (1967) ; *see* Namet v. United States, 373 U.S. 179, 188, 83 S.Ct. 1151, 1155, 10 L.Ed.2d 278 (1963), where seven Justices agreed that a plea of guilty to a gambling charge "would erase any testimonial privileges as to that conduct" involved in the charge; *see generally* C. McCormick, *supra* note 21, § 135, at 284.

25. C. McCormick, *supra* note 21, § 130, at 274.

26. American Law Institute, Model Code of Evidence, Rule 231; 9A Uniform Laws Annot., Uniform Rules of Evidence, Rule 37, at 621 (1965). These are similar. The test of Uniform Rule 37 provides :

> A person who would otherwise have a privilege to refuse to disclose or to pre-

vent another from disclosing a specified matter has no such privilege with respect to that matter if the judge finds that he or any other person while holder of the privilege has (a) contracted with anyone not to claim the privilege or, (b) without coercion and with knowledge of his privilege, made disclosure of any part of the matter or consented to such a disclosure made by any one.

A similar view on waiver of testimonial privilege is adopted in the proposed draft of Rules of Evidence for the United States District Courts and Magistrates, Rule 5–11, at 108 (Proposed Draft of Committee on Rules of Practice and Procedure of the Judicial Conference 1969).

27. Wise v. United States, 127 U.S.App. D.C. 279, 383 F.2d 206 (1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L. Ed.2d 1164 (1968).

self, especially if the investigation ripened just before the expiration of the statute of limitations, and then be able to balk all prosecution. And even a cooperative witness may be made vulnerable, by a doctrine that gives him choice, to the threats and blandishments of the defendant. There are doubtless other considerations of like import, but these suffice to establish the interest of law enforcement.

What of the other side of the coin? Is there a Fifth Amendment policy that would be furthered by restricting a witness's waiver before the grand jury so as to give him a mint-new privilege at trial? We can discern none. As Professor McCormick notes, such restriction "gives very little protection to the witness" once he has already disclosed incriminating facts. Although it has been suggested that the privilege protects a privacy interest,[28] reflection makes it clear that this is not the crucial interest, for it does not survive to protect the privilege once the fear of prosecution is gone, as in case of granted immunity.[29]

We turn to the precedents, to see if they require us to shrink from the reach of reason. Appellants have cited no Supreme Court decisions. To the extent that the Supreme Court's opinions offer guidance on the question before us, we think that they support a realistic rather than mechanical approach to the application of waiver. While the Court's decisions manifest extreme concern for safeguarding the privilege against self-incrimination and implementing its policies,[30] the Court has consistently refused to uphold refusals to testify when there is no "real" and substantial "hazard of incrimination." See Marchetti v. United States, 390 U.S. 39, 48, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Hoffman v. United States, supra, 341 U.S. at 486, 71 S.Ct. 814. In Rogers v. United States, supra, 340 U.S. 367, 71 S.Ct. 438,

cited in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489 (1964), the Court emphasized that "the privilege against self-incrimination presupposes a real danger of legal detriment arising from the disclosure * * *." 340 U.S. at 372–373, 71 S.Ct. at 442. Accordingly the Court held that a witness who volunteered incriminating answers to the Grand Jury could not invoke the privilege as to details which "would not further incriminate." 340 U.S. at 373, 71 S.Ct. at 442. The issue is "whether the question presented a reasonable danger of further crimination in light of all the circumstances, including any previous disclosures, * * * whether the answer * * * would subject the witness to a 'real danger' of further crimination." 340 U.S. at 374, 71 S.Ct. at 442.

 The privilege of course remains as to matters that would subject the witness to a "real danger" of further crimination, and that the witness need not demonstrate that danger "in the sense in which a claim is usually * * * demonstrated in court." Hoffman v. United States, supra, 341 U.S. at 486, 71 S.Ct. at 818. The witness is not required to run the risk if the answers may have a tendency to incriminate. Malloy v. Hogan, supra at 12, 84 S.Ct. 1489.

The Supreme Court has plainly tried to strike a balance between the policy of the privilege and the requirement for information. Generally the balance weighs heavily in favor of the privilege, but the witness's latitude in invoking his right requires at least an arguable contention of a real danger of legal detriment. Since it is our clear conviction that a finding of waiver in the case before us exposes the witness to no real danger of legal harm, the principles applied by the Supreme Court stand against the privileges claimed at the trial of appellants.

28. Boyd v. United States, 116 U.S. 616, 630, 633, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

29. See note 24 supra. And similarly if the statute of limitations has run, pardon has been granted, etc. Id.

30. Murphy v. Waterfront Comm'n, supra; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).

Various grounds have been advanced in the cases that refuse to find a waiver. In United States v. Miranti, 253 F.2d 135 (2d Cir. 1958), the court sustained Miranti's refusal to answer questions before a grand jury investigation even though he had previously testified before a grand jury and been tried and convicted. The court focused on the period that elapsed between the two investigations. It noted that the cases drew a distinction between two appearances in the same proceeding and appearances in different proceedings, saying as to the latter group:

> [The] prior disclosures were held not to constitute a waiver in the subsequent proceedings for the reason that during the period between successive proceedings conditions might have changed creating new grounds for apprehension (e. g., the passage of new criminal laws) or that the witness might be subject to different interrogation for different purposes at the subsequent proceeding. 253 F.2d at 140.[31]

■ It may be that in some situations the passage of time, and change in purpose of an investigation, may open up new real dangers. The question must be faced realistically, however, and not mechanically. In the case before us involving a grand jury presentation and then a trial without unusual delay, this danger does not have substance.[32]

In *Miranti* the court also said that reiteration constituted a danger because

> [R]eiteration adds to the credibility of the statement, * * * and if construed as a waiver could lead to additional questions requiring answers which further implicate the witness. 253 F.2d at 139–140.

If reiteration alone is sufficient for realistic new incrimination that would also prohibit a subsequent appearance before the same tribunal, and that plainly is not the law. Rogers v. United States, *supra*.

There may be a problem if a witness is asked questions that go beyond his previous disclosure. The *Miranti* court may have been sensitive to this problem because the witness was before a grand jury, which might run rough shod over subtle questions that might arise. Unlike *Miranti* the case before us involves a second disclosure at *trial*, in the presence of a judge, and for the *same* offenses considered by the Grand Jury. *Compare* United States v. Steffan, *supra* note 31 ("cases different").

■ To the extent that defense counsel's cross examination might probe matters of substance as yet unrevealed, the witness must retain his privilege, and the Government runs the risk of a mistrial or reversal, since the defendant cannot be deprived of his Sixth Amendment right to confrontation.[33] The

---

31. Thus the court cited, in addition to In re Neff, 206 F.2d 149, 36 A.L.R.2d 1398 (3d Cir. 1953), Poretto v. United States, 196 F.2d 392 (5th Cir. 1952) (five year lapse between investigations, "New federal criminal laws have been enacted * * * new grounds for apprehension"); United States v. Steffen, 103 F.Supp. 415 (N.D. Cal.1951) ("The question is a close one * * * not at all free from doubt."). In *Steffen* the witness who had testified at one trial was called upon to testify at a second trial of different defendants. The district judge found that "the circumstances and setting of the two cases are different [and] The extent of examination and cross examination * * * uncertain." 103 F.Supp. at 417. *But see* United States v. St. Pierre, 132 F.2d 837,

147 A.L.R. 240 (2d Cir. 1942), appeal dismissed on grounds of mootness, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943), distinguished in *Miranti, supra,* on the ground that "the considerable time lapse between successive proceedings was unavoidable * * * [and] the case involved a continuing interrogation before the same grand jury for the same purposes [whereas *Miranti* involved] * * * for all practical purposes two separate grand juries investigat[ing] unrelated crimes." 253 F.2d at 140.

32. *See* the *Miranti* Court's discussion of United States v. St. Pierre, *supra* note 31.

33. *See* Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

Government is not being exposed to an unreasonable burden, since it can control the scope of cross examination by its presentation on direct.[34]

But it does assume some risk in presenting a nonrecalcitrant witness if he can successfully assert his privilege in response to probing that lies within the latitude to which a defendant is entitled on cross examination of a witness. A realistic approach to the privilege, and possibility of "real danger," does present more problems to counsel and courts than a mechanical rule. Simple solutions cannot always be found in a complex society. The call of the law lies, however, in a diligent effort to give just weight to the various interests of individuals and their society, and to harmonize them with maximum attention to reality.

We now turn to In re Neff, 206 F.2d 149 (3d Cir. 1953), for a fuller discussion of the precedent that seems to have launched the doctrine invoked by the witness and the trial judge. Sylvia Neff was convicted of contempt for refusing to answer questions put to her as a subpoenaed witness at the trial of Anthony Valentino. Valentino had been under investigation by the grand jury and the witness Neff had been called to testify during the hearings. Between the grand jury investigation and Valentino's trial appellant had been convicted for perjury, with her appeal pending before the circuit court. At trial the prosecution sought to put questions that had already been answered before the grand jury. Neff had been in contact with her counsel, and she requested a recess which was denied by the trial judge. The court in discussing the waiver question relied on the "settled" rule that "a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding." 206 F.2d at 152. The only Supreme Court decision

cited for the proposition is Arndstein v. McCarthy, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138 (1920). That case does not, however, speak to the question of waiver. In Arndstein the contemnor had filed certain schedules during the course of a bankruptcy proceeding. It appears that during the course of the same proceeding appellant was interrogated as to the schedule and set up his privilege. In the Court's words:

> The writ [of habeas corpus seeking release for the contempt conviction] was refused upon the theory that by filing schedules without objection the bankrupt waived his constitutional privilege and could not thereafter refuse to reply when questioned in respect to them. This view of the law we think is erroneous. *The schedules alone did not amount to an admission of guilt or furnish clear proof of crime and the mere filing of them did not constitute a waiver of the right to stop short whenever the bankrupt could fairly claim that to answer might tend to incriminate him.* 254 U.S. at 72, 41 S.Ct. at 26. (Emphasis added.)

The holding of *Arndstein* is consistent with the view later espoused in *Rogers, Hoffman* and *Marchetti.* The witness in *Arndstein* was not asked merely to *repeat* incriminating statements that he had already made, but was interrogated as to new matter of substance. *See* Rogers v. United States, *supra,* 340 U.S. at 374, 71 S.Ct. 438. It is evident that a real danger of legal detriment existed.

*Neff* relies also on the point that a trial is a separate proceeding from the grand jury investigation and not a mere continuation of the same proceeding. We think, however, that this is a "mechanical limitation" that fails to focus on the underlying interests: whether the witness's privilege is jeopardized, and the interest of the community in obtaining full disclosure at criminal trials.

---

34. *Cf.* Hill v. United States, D.C.Cir. No. 21,162 (the prosecution must anticipate the possibility of prejudice arising out of joinder of counts or defendants).

However sound the result in *Neff* on its facts,[35] we decline to adopt its broad language as controlling for all circumstances. We think the better rule is to hold that the waiver carries through unless there is new material, or possibly new conditions,[36] that may give rise to further incrimination. To the extent that the *Neff* court apprehended prejudice from the mere fact of repetition of the earlier testimony we reject its holding.

We hold that where a non-indicted witness has waived his Fifth Amendment privilege by testifying before a grand jury voluntarily and with knowledge of his privilege, his waiver extends to a subsequent trial based on an indictment returned by the grand jury that heard his testimony. We repeat, for emphasis, that our holding does not apply when the witness is himself accused or under indictment. We also hold that the witness is entitled to counsel, either his own or court appointed, and may object to any question that would require disclosure of new matter of substance.

In our view this approach accommodates both the policies underlying the Fifth Amendment's privilege and the interest of obtaining full disclosure whenever possible in criminal trials.

### D. *Disposition of the case before us.*

Our disposition is shaped by the scope of appellants' standing, *cf.* Smuck v. Hobson, *supra,* which is limited to the propriety of the trial judge's granting immunity to Izzard. While we disagree with the theory of the District Court, reversal does not follow since his ruling is sustainable on other grounds, which we have set forth in Part C.

As there noted we hold that a witness's voluntary testimony before a grand jury is a waiver for purposes of trial. This still leaves room for consideration of whether under the facts of any particular case the witness's pre-trial statement constitutes a waiver.[37]

If the trial judge had considered the question and ruled there was a waiver, the defendant would not have standing to attack the ruling, even if

35. As the opinion notes:
 Between the time of defendant's [Neff's] testimony before the grand jury and her claim of privilege at Valentino's trial she had been convicted of perjury before the grand jury * * *. Thus the setting in which the questions were asked of her had greatly changed and she could have had apprehensions as to the incriminating effect of her requested testimony which she did not have on the earlier occasion. And these apprehensions were certainly not lessened by the refusal of the trial judge to give her time to consult counsel with respect to her rights as a witness. 206 F.2d at 152–153.

36. We confess we do not readily discern how mere change in circumstances will create real apprehension of legal prejudice from repeating what has already been disclosed. The court does not elaborate on this point. Counsel for appellants has offered no explanation.

37. There is, of course, an important distinction between prior sworn testimony at a formal proceeding, for example a grand jury hearing, and statements volunteered during an informal investigation

or properly supervised custodial situation. We deal with a question of substantially increased credibility and reliability. Thus we do not hold that waiver takes place when a witness, who has made disclosures to investigating agents is called at trial, or before the grand jury. *Compare* United States v. Goodman, 289 F.2d 256, 259 (4th Cir.), vacated and remanded to the district court, 368 U.S. 14, 82 S.Ct. 127, 7 L.Ed.2d 75 (1961). While our rule is somewhat narrower than that urged by Professor McCormick, *supra* note 21, who suggests waiver as to disclosure in writing as well as sworn testimony, we feel that a statement made to investigators, as opposed to that at a formally constituted tribunal, has less impact even in legal significance if introduced at a subsequent trial of the witness. Thus, the witness may suffer real detriment if he is held to his informal waiver.

Moreover, the interest of law enforcement is not endangered in the same way. Although a written statement may launch further investigation, or even be introduced as hearsay before the grand jury, the Government is not likely to stake its case on a witness who is unwilling to cooperate before the grand jury.

erroneous, as a ground of reversal. In this case the trial judge did not make a ruling but we feel the record before us is clear enough to indicate that the interest of justice does not justify a remand. The transcript shows (Tr. 42–44) that Izzard expressly stated to the grand jury that he had consulted a lawyer prior to going before the grand jury; that he wished to cooperate with the Government though he understood he did not have to; that this cooperation was voluntary, and that he knew anything he said could be used against him. Izzard's counsel at trial pointed out that before the grand jury Izzard said he did not think he was presently charged for the offense. We think this of no significance. Izzard subsequently and expressly testified to the grand jury that he did understand, and his attorney had explained that anything he said could be used against him; and understanding that it was his wish to tell what he knew about the case.[38]

The judgment is

Affirmed.

38. Since the concept of waiver is a circumscribed one, it would be well for the prosecutor routinely to advise all grand jury witnesses waiving the privilege that they may be called to testify at trial, to avoid any possible subsequent contention that they did not knowingly waive what they thought was a right to be silent at trial. This contention was not made in the case at bar.

DANAHER, Circuit Judge (concurring in part and dissenting in part):

I fully agree that the convictions of Ellis and Watkins should be affirmed. I dissent from the treatment and the conclusions in Parts A and B, but I concur in so much of Part C of Judge Leventhal's opinion as now holds that under the circumstances [1] of this case, the witness Izzard was not entitled to claim at trial the privilege against self-incrimination which, after advice of counsel, he had expressly waived when he testified before the grand jury.

As a companion in the crime of arson, directly participating with these appellants in the events leading to their apprehension and conviction, Izzard owed the public duty to testify which every person within the jurisdiction of government is bound to perform.[2] The public interest in prosecuting those accused of crime requires no less.[3] With the rights of the public in mind, on the one hand, and, on the other, with these appellants claiming that they could not validly be

1. It follows that I agree with so much of Judge Leventhal's statement of our holding on this aspect as reads: "We hold that where a non-indicted witness has waived his Fifth Amendment privilege by testifying before a grand jury voluntarily and with knowledge of his privilege, his waiver extends to a subsequent trial based on an indictment returned by the grand jury that heard his testimony." (at 805.)

As to what was disclosed in the transcript concerning waiver, see p. 805. It should be remembered that Izzard had not been indicted, whether because the prosecutor had so stipulated with Izzard's counsel or even, perhaps, because the grand jury refused to indict in view of Izzard's cooperation and of the imminence of his entry upon military duty. Certainly the grand jury was not bound to return a true bill.

In any event, it is not at all unusual, and often is necessary, that a prosecutor or the court rely upon an accomplice "because the criminals will almost certainly proceed covertly," as the Supreme Court noted in Hoffa v. United States, 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966), quoting Hand, J., in United States v. Dennis, 183 F.2d 201, 224 (2 Cir. 1950), aff'd, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

2. Cf. Blair v. United States, 250 U.S. 273, 281, 39 S.Ct. 468, 63 L.Ed. 679 (1919).

3. Cf. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969). The Court there notes the public interest in prosecuting those accused of crime with the result to depend upon "all the evidence which exposes the truth."

If we are to recognize "realities," the entire population of this District, the trial judge and we, ourselves, can not fail to recall the devastation wrought by the series of arsonists who have so recently put to the torch hundreds of properties, with losses running into the millions. And see U.S. News & World Report, Oct. 28, 1968, p. 70, citing excerpts from The Washington Post of Oct. 13, 1968, "Ten Blocks From the White House."

convicted on testimony elicited from Izzard. I have no difficulty in striking a balance.

Let it be noted that Izzard is not here complaining. The appellants are contending, in effect, that his rights became their rights, and that a violation of his rights requires a reversal of their convictions. The claim is spurious.

> Where the witness is not the party, the party may not claim the privilege nor take advantage of an error of the court in overruling it. On this point the authorities are practically unanimous. [Citations omitted.]⁴

In not dissimilar circumstances, we have taken the position that the accused would lack standing to object to the inculpatory testimony.⁵

Let me indicate briefly just what happened and the substance of Izzard's testimony at trial.

Shortly before and shortly after midnight on August 1, 1967, two fires were reported. Investigating officers arrested Izzard who was carrying a large rock and two other culprits, one Jackson and one Ellis who were carrying incendiary devices identified on the record as "molotov cocktails." A fourth person then escaped but was later apprehended. He is the appellant Watkins. When called by the Government to testify at trial, Izzard was advised by the judge that he was not compelled to testify because of the possibility of incrimination, whereupon Izzard replied "I wish not to testify." An attorney was appointed to advise Izzard of his rights.

Out of the presence of the jury, an extensive colloquy occurred after which the jury returned, and the judge called Izzard as the court's witness. When Izzard on Fifth Amendment grounds refused to reply to the questions posed by the judge, the latter directed that Izzard respond. Thereafter the witness testified in detail. He identified Ellis as having thrown a rock through a store window and added that Jackson threw two molotov cocktails through the broken window, neither of which lighted. However, "Watkins threw the last one and that is the one that started the fire."

That particular fire having been extinguished, the group of four planned further ventures. Jackson and Watkins secured a gallon of gasoline in a bucket and another gallon in a jug. The four young men filled some six bottles with gasoline and inserted wicks. The culprits perfected plans, Izzard testified, "to burn a store" at the corner of Tenth Street and L. They abandoned the plan to burn "that store because someone might get burned up" since there was an apartment next to the store. As they set about locating another objective, police picked up three of the men. Izzard told the police that Watkins who had escaped was known to him as "Jones," explaining that as the officers "didn't catch him I didn't see no reason to bringing his name up."

The trial judge explained to the jury that Izzard had been called by the court for a "trial judge has the right to call witnesses who can furnish light on what is being considered by the jury in this case." Each attorney, he added, "was to be given the opportunity to question him, to cross examine his testimony." And that course was followed.

Surely under the circumstances, the trial judge in response to the public's interest in the truth as to guilt or innocence was bound to balance that interest against any possible rights the appellants might seek to derive from the ruling when Izzard was made the court's witness.⁶ I suggest with some assurance

---

4. Bowman v. United States, 350 F.2d 913, 916 (9 Cir. 1965), cert. denied, 383 U.S. 950, 86 S.Ct. 1209, 16 L.Ed.2d 212 (1966).

5. Long v. United States, 124 U.S.App. D.C. 14, 19, 360 F.2d 829, 834 (1966).

6. Had Izzard refused to testify and had he then been held in contempt, we would have a very different problem. But it is clear enough that the judge was fully familiar with the holding of the Court in Murphy v. Waterfront Comm'n, 378 U.S. 52, 77–78, 84 S.Ct. 1594, 1609, 12 L.Ed. 2d 678 (1964): "We hold that the constitutional privilege against self-incrimi-

that the appellants gained no rights, either to exclude relevant and probative evidence because elicited from Izzard or to challenge the ruling which produced it.

I deem it irrelevant to our disposition that our concern relates to Izzard's Fifth Amendment rights and their reach whereas the Court last month was speaking to comparable results stemming from a Fourth Amendment issue. Suppression of the product of a violation of the Fourth Amendment

> can be successfully urged *only* by those whose rights were violated by the search itself, *not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing.*[7] (Emphasis added.)

So Izzard's rights were his own, personal to himself, and "like some other constitutional rights, may not be vicariously asserted." [Citations omitted.][8]

As far as I can see, an appropriate disposition of this case requires no further treatment. Unless substantial rights of these appellants had been violated, affirmance is clearly in order, and no showing to the contrary has here been made. And that is all we need to say.

J. SKELLY WRIGHT, Circuit Judge, (dissenting):

I join in Parts A and B of Judge Leventhal's opinion, but because I cannot agree with Part C I must dissent from the judgment of affirmance.

Judge Leventhal would have us depart from the established principle that "a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same

matter in a subsequent trial or proceeding." In re Neff, 3 Cir., 206 F.2d 149, 152 (1953). His premise is that compulsion of testimony which does not enhance the risk of prosecution or conviction invades no interest protected by the Fifth Amendment.

On the contrary, I believe the Fifth Amendment not only protects against the risk of prosecution on evidence extorted from the defendant, but also establishes a right to abstain from the demeaning ritual of public self-accusation. In the words of Mr. Justice Douglas, "The Fifth Amendment protects the conscience and the dignity of the individual, as well as his safety and security, against the compulsion of government." Ullmann v. United States, 350 U.S. 422, 449, 76 S.Ct. 497, 512, 100 L.Ed. 511 (1956) (dissenting opinion).

Thus here the witness Izzard chose to waive his right to silence in the privacy of the grand jury hearing. He chose to assert that right rather than recite the evidence of his guilt in open court. The different circumstances of the two proceedings make his decision entirely explicable in terms of those considerations of human dignity which the Fifth Amendment was designed in part to protect.

It is true that compelled self-accusation has not been absolutely barred by the Fifth Amendment. Congress has judged, and a divided Supreme Court has acquiesced in the judgment, that the necessities of public justice allow the compulsion of self-incriminating testimony for the proof of certain serious crimes when immunity from prosecution is granted in return. Ullmann v. United States, *supra* (6–2 decision); Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40

---

nation protects a state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well as federal law." Can one be heard to say the Court so ruled without authority?

Of course the Fifth Amendment would have protected Izzard in any event had adverse action been taken as to him.

7. Alderman v. United States, *supra* note 3, 394 U.S. at 171–172, 89 S.Ct. at 965.

8. *Id.*, 394 U.S. at 174, 89 S.Ct. at 966.

L.Ed. 819 (1896) (5–4 decision). The requirement that immunity be granted at least gives some insurance that the witness' Fifth Amendment interests will not be overridden lightly. Judge Leventhal's opinion would allow those same interests to be overridden without legislative provision of the same protective *quid pro quo*. I cannot agree.

I respectfully dissent.