Matthew TOMLIN, Appellant,

v.

UNITED STATES, Appellee.

No. 95–SP–54.

District of Columbia Court of Appeals.

Argued June 11, 1996.

Decided July 18, 1996.

W. Bronson Howell, appointed by this court, for appellant.

Pamela S. Satterfield, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III and Gary M. Wheeler, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN and KING, Associate Judges, and GALLAGHER, Senior Judge.

FERREN, Associate Judge.

Matthew Tomlin challenges his criminal contempt conviction based on his refusal to answer questions posed to him as a defense witness in the trial of Tomlin's former codefendant, Kevin Stewart. We affirm.

I.

On February 28, 1990, Tomlin and another individual, later identified as Kevin Stewart, were indicted for second-degree murder while armed, D.C.Code §§ 22–2403, –3202 (1996 Repl.), assault with intent to kill while armed, id. at §§ 22–501, –3202, armed robbery, id. at §§ 22–2901, –3202, and assault with a dangerous weapon, id. at § 22–502. Tomlin's trial was severed from Stewart's, and Tomlin testified in his own defense at his trial on March 19, 1991. He related that on December 6, 1989, he had gone to 610 Irving Street, N.W., with a friend named Danny. Tomlin further testified that the person the government had identified to the jury during voir dire was Kevin Stewart, not Danny. Tomlin explained that he and Danny had been attacked by a group of men in the alley

behind 610 Irving Street, N.W., and that Danny had stabbed the men in self-defense. A jury found Tomlin guilty of second-degree murder while armed and assault with intent to kill while armed. Tomlin was sentenced to fifteen years to life in prison on the murder charge and to nine years to life in prison on the assault charge, the sentences to run consecutively. Tomlin filed a timely appeal, and we affirmed his convictions in an unpublished Memorandum Opinion and Judgment on February 7, 1996.

In September 1995, Tomlin filed a motion for new trial under D.C.Code § 23–110 (1996 Repl.) alleging ineffective assistance of counsel on various grounds, none of which is relevant here. The motion for new trial was denied on March 7, and Tomlin noted his appeal on March 22, 1996.

Kevin Stewart, originally Tomlin's codefendant, was tried in December 1994, while Tomlin's direct appeal was pending. Defense counsel subpoenaed Tomlin to testify on Stewart's behalf, i.e., that Tomlin had been with "Danny," not Stewart, in the alley. At a pretrial hearing, Tomlin asserted the Fifth Amendment privilege against self-incrimination, stressing that his conviction was not final. He therefore argued that he remained vulnerable to self-incrimination if he were to testify for Stewart before his own possible new trial.

To determine the validity and scope of Tomlin's privilege, Judge Richter allowed defense counsel to ask Tomlin the intended questions outside the presence of the jury. See Salim v. United States, 480 A.2d 710, 715 (D.C.1984) (proper for trial court to examine witness outside presence of jury to decide Fifth Amendment privilege). Tomlin answered questions about his relationship with Stewart, replied that Stewart had not been with him at any time during the evening of December 6, 1989, and described what he had done upon arriving at 610 Irving Street, N.W., that night. Eventually, however, Tomlin refused to answer a question: "Did

there come a time when you left your friends in the hallway and you went outside into the alley behind 610 Irving Street?"

The trial judge assumed, for purposes of analysis, that Tomlin's Fifth Amendment privilege extended until his conviction on appeal was final. The judge ruled, nonetheless, that Tomlin had waived his Fifth Amendment privilege to decline to answer this particular question, because both the prosecutor and defense counsel had agreed that Tomlin had testified at his own trial that he had gone into the alley behind 610 Irving Street.[1] Judge Richter ordered Tomlin to answer the question, and when Tomlin again refused, the judge held Tomlin in contempt. Judge Richter sentenced Tomlin to sixty days in prison, to be served consecutively to any other sentence. Tomlin noted a timely appeal.

## II.

Like the trial court, we assume without deciding that Tomlin's Fifth Amendment privilege extends through his direct appeal, and therefore turn to consider whether Tomlin had waived the right to assert the privilege at Stewart's trial by testifying under oath at his own earlier trial. In a decision that is binding on us, the United States Court of Appeals for the District of Columbia has previously held:

> where a non-indicted witness has waived his Fifth Amendment privilege by testifying before a grand jury voluntarily and with knowledge of his [or her] privilege, his [or her] waiver extends to a subsequent trial based on an indictment returned by the grand jury that heard his [or her] testimony.

Ellis v. United States, 135 U.S.App.D.C. 35, 49, 416 F.2d 791, 805 (1969). While acknowledging that Ellis had dealt with a Fifth Amendment waiver before a grand jury, the trial judge reasoned that the logic of Ellis fully applied to Tomlin's situation as well.

---

1. At his own trial, Tomlin had been asked and had answered:

 Q: Now, where did you go when you left the apartment building [at 610 Irving Street, N.W.]?

 A: We went—me and Danny left out the building, walked through the alley.

Tomlin points out, however, that *Ellis* expressly "does not apply when the witness is himself [or herself] accused or under indictment." *Id.* at 49, 416 F.2d at 805. Tomlin further notes that *Ellis* represents a minority rule that other jurisdictions have declined to follow and academics have criticized. *See United States v. Licavoli,* 604 F.2d 613, 623 (9th Cir.1979) (declining to follow *Ellis,* a decision that "depart[s] from the prevailing rule"); McCormick on Evidence § 140, at 528 (John William Strong ed.) (4th ed. 1992) ("*Ellis* unwisely extends a witness's loss of his [or her] privilege beyond the 'proceeding' in which he [or she] testifies."). Tomlin accordingly urges us to limit *Ellis* to situations where the witness testifies before the grand jury and later is called to testify at a trial based on a resulting indictment. The government contends, to the contrary, that *Ellis* controls the result here. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971). We agree with Tomlin that *Ellis* does not mandate the outcome, but we conclude that *Ellis* is persuasive and thus should be applied.

We begin by noting that if, as Tomlin contends, his testimony were barred by the Fifth Amendment privilege, the community's interest in law enforcement would not be seriously affected; Tomlin would be deemed "unavailable" and, as a consequence, the transcript of his prior testimony very likely would be admissible in Kevin Stewart's trial. *See Skyers v. United States,* 619 A.2d 931, 933–34 (D.C.1993) (listing requirements to admit prior sworn testimony); *Harris v. United States,* 614 A.2d 1277, 1284 (D.C. 1992) (suggesting admission of prior sworn testimony of witness possibly unavailable due to fifth amendment privilege). In Stewart's trial, in fact, a transcript of Tomlin's earlier testimony was read to the jury, and Stewart was acquitted of all charges. In most cases like this one, therefore, extending the witness's Fifth Amendment privilege will not keep information from the jury; it will only change the manner in which the jury receives the information.

 On the other hand, Tomlin's interest in refusing to testify is also substantially lessened here. The limits of the Fifth Amendment privilege are defined by the link between the testimony sought and potential prosecution as a result. *See Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951) (Fifth Amendment privilege "presupposes a real danger of legal detriment arising from the disclosure"; Fifth Amendment does not apply where "response to the specific question in issue ... would not further incriminate [witness]"). For example, the privilege does not apply when immunity has been granted, when the statute of limitations has run, or when a pardon has been granted. *See Ellis,* 135 U.S.App.D.C. at 44, 416 F.2d at 800. Furthermore, a witness's constitutionally protected interest in avoiding incrimination that leads to prosecution is not jeopardized by merely repeating information previously disclosed under oath. *See id.* at 45, 416 F.2d at 801. We find the reasoning of *Ellis* persuasive and accordingly conclude that once someone has voluntarily, knowingly, and intelligently decided to testify under oath at one judicial proceeding, he or she may be compelled to testify about the very same matters as a witness at a later proceeding.

It is important to recognize the limits of our decision. Crucial to our ruling is the fact that Tomlin previously had waived his Fifth Amendment privilege knowingly, intelligently, and voluntarily after consulting with counsel; we do not consider what the result would be if Tomlin claimed otherwise. *See Harris,* 614 A.2d at 1282–83 (distinguishing between voluntary and knowing/intelligent waivers); *Alston v. United States,* 383 A.2d 307, 312 (D.C.1978) (witness who testified at plea proceeding, but was not advised of his right to remain silent, did not waive Fifth Amendment privilege for purposes of testifying at a later proceeding).

 Our ruling is further limited to situations where the questions asked do not broach a topic not testified about earlier. The questions asked of Tomlin here did not "require disclosure of any new matter of substance." *Ellis,* 135 U.S.App.D.C. at 49, 416 F.2d at 805. Additionally, we note that a defendant's Fifth Amendment privilege is broader than that of an ordinary witness's. *See Salim,* 480 A.2d at 714. Tomlin, having waived the greater privilege afforded a de-

fendant, cannot now be heard to invoke the lesser privilege afforded a witness. We, therefore, do not consider whether a situation could arise in which a witness's Fifth Amendment waiver would be a waiver of the Fifth Amendment privilege as a defendant. Additionally, we leave open the possibility, as the court did in *Ellis,* that the waiver may terminate if new conditions develop that give rise to further incrimination. *See Ellis,* 135 U.S.App.D.C. at 49, 416 F.2d at 805. Finally, Tomlin has made no credible claim—at trial or on appeal—that his testimony at Stewart's trial would have exposed him to a risk of prosecution for perjury based on his testimony at an earlier proceeding. *See* McCormick on Evidence, *supra,* § 140, at 528.

■ Given the limited circumstances presented here, we hold that Tomlin's valid waiver of his Fifth Amendment privilege as a defendant at his own trial extended to effect a waiver of his Fifth Amendment privilege as a witness at Stewart's later trial.

*Affirmed.*