In re L.J.T. & T.T.

I.P., Appellant.

Nos. 91–FS–517, 91–FS–843.

District of Columbia Court of Appeals.

Submitted May 6, 1992.
Decided May 22, 1992.

Robert J. Warner, Washington, D.C., was on the brief, for appellant.

John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Mary L. Wilson, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellee District of Columbia.

Before SCHWELB, FARRELL and KING, Associate Judges.

PER CURIAM:

Appellant is the natural father of the child T.T., who, along with her younger half-brother, L.J.T., was removed from their mother's care after the mother entered a stipulation to neglect under D.C.Code § 16–2301(9)(B) (1989). Appellant challenges the trial court's ultimate decision to return the children to the mother under the court's protective supervision, subject to a right of visitation by appellant. Appellant contends that he, as the non-neglectful parent, deserved a preference in the dispositional decision by the judge, that the failure to give him this preference violated his constitutional right to raise his child, and that the trial judge erred in applying the "best interests of the child" standard when deciding where the children should be placed.

The trial judge recognized that this was a difficult case given the mother's past behavior (including past use of illegal drugs). Nevertheless, we find no error in

the judge's application of the "best interests of the child" standard or her decision to return the children to the mother's care, as the decision is supported by substantial evidence. *In re S.G.*, 581 A.2d 771, 781 (D.C.1990). We hold further that appellant's constitutional rights were adequately protected during the neglect and dispositional hearings. We therefore affirm the trial judge's order.

## I.

The District of Columbia filed a neglect petition on September 11, 1990, alleging that T.T. and her younger half-brother L.J.T. were neglected.[1] At the first two hearings in the case before Commissioner Buxbaum, appellant was not present but was represented by counsel.[2] Before the first of these hearings, T.T. was placed in foster care and L.J.T. was given to his natural father.[3] At the first hearing, L.J.T. was removed from his natural father's care and placed in a shelter. At the second hearing, the commissioner refused to place L.J.T. with his paternal grandparents and placed L.J.T. in the same foster home as T.T. There was considerable testimony concerning the joyful reunion of the siblings. At the next hearing on October 10, 1990, Judge Kaye Christian received the mother's stipulation to a finding of neglect. Appellant was present at this hearing and voiced his desire to accept placement of his child. The trial judge ordered a home study done on appellant at his residence in Patterson, New Jersey, to determine his fitness to raise T.T.

After four continuances, a dispositional hearing was held before Judge Christian on May 10, 1991. The judge heard representa-

tions from attorneys for the natural fathers, the mother, and the children, and had before her the home study of appellant and the social worker's recommendation concerning placement of the children. The home study of appellant found him to be a fit father and placement of T.T. with him to be "most appropriate." The social worker's report, although recognizing that appellant's home was adequate for T.T., recommended returning the children to their mother under the protective supervision of the court. The social worker placed special emphasis on keeping the children together and on the fact that, for whatever reason, appellant had had very little contact with his daughter. The children's attorney emphasized the importance of T.T. remaining in a family unit she was familiar with and that the children should not be separated.

Judge Christian accepted the social worker's recommendation and ruled that the children should be returned to their mother, with significant visitation rights for appellant. The judge stated:

> The Court certainly has reflected long and hard with respect to this case. The Court has read the recommendation in the report; the Court has read the information from New Jersey. The Court certainly has tried to get a handle on all of the parties concerned in this case; that is Mr. P. [appellant], Mr. T., the mother, the children's situation.... In addition, the Court is required to do that which is in the best interests of these children, and the Court finds that separating these children would not serve their best interest. The Court realizes that the children have not only a mother but they have a father. The Court believes that the children should have con-

1. T.T. and L.J.T. were seven and two years old respectively at the time and had lived together with the natural mother since birth.

2. His counsel stated that appellant's absence was due to the fact that he lived in New Jersey and had not been given notice of the hearings.

3. L.J.T.'s natural father is not a party to this appeal. Appellant is, however, contesting Judge Christian's dispositional order which dealt with both children at once, and thus appellant is also contesting the placement of L.J.T. Neverthe-

less, there was little evidence below that appellant wanted custody of both children. It is unclear whether appellant is contending in this appeal that L.J.T. should also have been placed with him. But as appellant has no blood relationship with L.J.T., he cannot advance the same arguments with regard to L.J.T. that he does with regard to his own daughter. Since appellant's brief addresses solely the placement of T.T., we do likewise and consider solely the placement of T.T. and the trial judge's reasons for that decision.

tact with both parents. That is not to say that the Court does not have the obligation to reunify the family unit that was intact before the case was brought to the Court's attention.... The Court doesn't believe that [T.T.] should be deprived from the love and family interaction that she has with her mother and her brother L.

In light of the mother's past conduct, however, the judge placed the children under the protective supervision of the court, stating:

The Court is going to hold the mother [to] a very high standard. And the Court would remind the mother that the Court will monitor the case. The Court has the obligation, both morally and legally, to monitor the situation to make sure that the children's placement is appropriate and that it's safe and protected in the environment that they're living in.

## II.

■ We first address appellant's claim that the trial judge erred by applying the "best interests of the child" standard to the placement decision. Appellant contends the judge did so in mistaken reliance on *In re B.C.*, 582 A.2d 1196 (D.C.1990). Appellant claims that because *B.C.* dealt with a natural father found to have neglected his children, that case and its exposition of the "best interests" standard is inapplicable to his case, as no finding of neglect has been entered against him.

In truth, however, the best interests of the child was the standard in neglect cases long before *B.C.* was decided, *e.g., In re N.M.S.*, 347 A.2d 924, 927 (D.C.1975), and has been repeatedly affirmed as the proper standard. *See In re A.C.*, 597 A.2d 920, 923 (D.C.1991); *Appeal of A.H.*, 590 A.2d 123, 132 (D.C.1991); *In re S.G.*, 581 A.2d at 784; *In re A.B.E.*, 564 A.2d 751, 754 (D.C. 1989) (applying same standard to termination of parental rights proceedings). In-

deed, that standard is dictated by the applicable statutes. *E.g.,* D.C.Code § 16–2320(a) ("If a child is found to be neglected, the Division may order any of the following dispositions which will be in the best interest of the child"). Thus it is clear that the trial judge applied the correct standard in making her decision.

Appellant's other contentions were essentially answered by this court in *In re S.G.*, *supra*. In that case the dispute over placement was not, as in this case, over which of two natural parents should have temporary custody, but rather whether the natural father or the maternal grandmother should receive temporary custody. Nevertheless, this court made it clear that under the dispositional portion of the neglect statutes, "[n]othing ... requires that a finding of neglect must first have been entered against a non-custodial parent before the court may order a disposition over that parent's objection." *Id.* at 784;[4] *accord Appeal of A.H.*, 590 A.2d at 132. We sustained the decision placing the child with the maternal grandmother based upon the following findings by the trial judge: the placement would "maintain[ ] the family unit and preserve[ ] [S.G.'s] relationship with [her] siblings"; it would "allow[ ] [S.G.] to remain in Washington, D.C. where she had lived for most of her life"; it would take into account that S.G. had "never lived with her father"; by contrast, placing S.G. with her father would "thrust[ ] her into a totally unfamiliar environment"; and under the trial judge's order, S.G. could "have just as much contact now with her natural father as she had before these proceedings." *In re S.G.*, 581 A.2d at 784. As set forth earlier, the trial judge made nearly identical findings in this case. Therefore, as in *S.G.*, the record "belie[s] the assertion in [appellant's] brief that the court did not consider the father's right to custody and 'ignored' the father's home." *Id.*[5] Judge Christian explained that she

---

**4.** The separate opinion of Chief Judge Rogers, joined by Judge Ferren, did not take issue with this point. *See* 581 A.2d at 786–88.

**5.** Indeed, the record makes clear that if appellant takes advantage of all the visitation privi-

leges granted him, he will have more contact with his daughter than he has had in T.T.'s entire life.

had read the home study on appellant, but accepted the social worker's recommendation that to separate the siblings and place T.T. with a parent she did not really know would not be in the child's best interests.

■ We have repeatedly stressed the existence of a preference toward placing children with their natural parents. *In re S.G.*, 581 A.2d at 785.[6] And we must also heed the statutory directive that "[i]t shall be presumed that it is generally preferable to leave a child in his or her own home." D.C.Code § 16–2320(a). Often these factors will conflict, but here they coalesce. The trial judge did not confront a choice between a fit parent and a fit nonparent (as in *S.G.*), but rather a choice between appellant and a natural mother who, though previously found unfit, had reclaimed her suitability as custodian sufficient to be entrusted with her child under court supervision.[7] The trial judge took proper account of appellant's status as a fit, non-custodial natural father; his fitness was explicitly addressed in the home study before the court. That the judge found T.T. would be better off in an environment she knew and with her sibling does not mean that appellant's fitness or interests were disparaged. *See In re S.G.*, 581 A.2d at 781; *Appeal of A.H.*, 590 A.2d at 132–33. The constitutional right of a natural parent to direct the upbringing of a child must sometimes "yield to the child's best interest[s]." *In re A.C.*, 597 A.2d at 923; *In re A.B.E.*, 564

A.2d at 754–55. When, as here, appellant received notice, an opportunity to be heard, and ample consideration at the hearings,[8] the judge's decision, supported by substantial evidence, to place the child with the natural mother did not violate appellant's constitutional rights.

Accordingly, the order of the Superior Court is

*Affirmed.*

---

6. We assume for purposes of this discussion that appellant would deserve the parental preference as against a non-parent. To receive this preference, the parent must have grasped his or her "opportunity interest" in the child under *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983), and *Appeal of H.R.*, 581 A.2d 1141 (D.C.1990). That appellant has done so as to T.T. is not entirely clear from this record. At the time of the neglect hearings, T.T. was seven years old. The social worker's report found appellant's claims that he had maintained contact with T.T. troubling in the face of his denial of knowledge of the circumstances that led to the neglect hearings. Moreover, appellant himself claims that for five years he had no contact with T.T. because the mother "hid" the child. Without deciding this issue, we simply note that as "a noncustodial parent who ha[s] previously surrendered custody of [T.T.] to her natural mother for a number of years, and who ha[s] never previously sought permanent custo-

dy of the child himself, [appellant is] not in the same position as one who has grasped his 'opportunity interest.'" *In re S.G.*, 581 A.2d at 787 (Rogers, C.J., joined by Ferren, J., concurring).

7. The judge specifically found that the mother had substantially complied with all requirements placed on her by the court at previous hearings. There is no "super preference" such as appellant would have us create in favor of a parent never been found neglectful over a parent once found neglectful. Moreover, as the trial judge queried, "[I]f a child is found in deplorable conditions, isn't that an allegation against both [custodial and non-custodial] parents?"

8. In view of the wealth of documentary and other information before the trial judge at disposition, we reject appellant's claim that a formal evidentiary hearing was necessary.