837 A.2d 40 (2003)
In re J.W.
V.W., Appellant.
No. 02-FS-243.
District of Columbia Court of Appeals.
Argued September 25, 2003.
Decided December 4, 2003.
*41 Pierre E. Bergeron, appointed by the court, for appellant, V.W., father of respondent, J.W.
*42 Sheila Kaplan, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, were on the brief for appellee, District of Columbia.
Michael O'Keefe, filed a statement in lieu of brief for respondent, J.W.
Paul E. Nystrom, Jr., New York City, filed a statement in lieu of brief for S.T., mother of respondent.
Before STEADMAN, RUIZ and GLICKMAN, Associate Judges.
RUIZ, Associate Judge:
This appeal arises from a determination by the Superior Court that two year-old J.W. is neglected within the meaning of D.C.Code § 16-2301(9)(E) (2001) because her biological father, V.W., sexually abused her four year-old half sister, H.T. The neglect proceeding against V.W. followed a separate stipulation of neglect entered into by J.W.'s mother, S.T., as well as a jury trial in which V.W. was criminally convicted of sexually abusing H.T. On appeal, V.W. argues that the trial court lacked jurisdiction to enter the neglect findings against him because the court earlier had found J.W. neglected under the terms of S.T.'s stipulation. He also complains that he was denied due process of law because he was forced to refrain from testifying in the neglect case to preserve his Fifth Amendment privilege against self-incrimination in the criminal case, which was and still ispending appeal. We affirm the trial court's neglect determination because we see no cognizable error in the proceedings below.

I.
V.W. and S.T. shared a home in the District of Columbia together with their biological children, J.W. and D.W., and with H.T., S.T.'s daughter from a prior relationship. H.T. was born on June 22, 1995; J.W. and D.W. were born on June 14, 1998 and April 30, 1999, respectively. Living together as a family, V.W. undertook the responsibilities of fatherhood for all three children.[1]
In January of 1999, the children's maternal grandmother placed an anonymous phone call to the Safe Hotline in order to report that her granddaughter, H.T., had been sexually abused by V.W. Following an investigation by the Metropolitan Police Department, during which H.T. reported that V.W. had "fondled, sodomized, and digitally penetrated her," the government filed a neglect petition, alleging that both V.W. and S.T. neglected the three children (H.T., J.W. and D.W.). In addition, criminal charges were filed against V.W. for his sexual abuse of H.T. Following a jury trial, V.W. was convicted of two counts of first degree child sexual abuse and two counts of second degree child sexual abuse. As a consequence, V.W. was sentenced to a minimum of thirty years of imprisonment.
Thereafter, on October 31, 2000, S.T. stipulated that she had neglected each of her three children by failing to protect them from V.W. The stipulation included several factual admissions: (1) H.T. reported to S.T. that V.W. masturbated while watching pornographic videos in H.T.'s presence; (2) although S.T. threw *43 out all of V.W.'s pornographic material, she later allowed V.W. to bring new pornographic material back into the home; (3) S.T. knew that V.W. drinks alcohol almost daily and smokes cannabis; (4) S.T. knew that V.W. previously had been charged with indecent acts involving a minor; (5) S.T. left the children alone with V.W.; and (6) H.T. had been sexually abused by V.W., although S.T. was unaware of it at the time. The trial court accepted the stipulation and entered neglect findings under D.C.Code § 16-2301(9)(B).[2]
V.W. did not similarly admit to neglecting the children, choosing instead to appeal his criminal conviction and pursue a hearing on the neglect petition. Importantly, V.W.'s criminal appeal was pending at the time of the hearing.[3] V.W. initially moved to dismiss the neglect petition on the ground that the trial court lacked jurisdiction to enter the neglect findings against him because the court earlier had found the children neglected under the terms of S.T.'s stipulation.[4] After the court denied the motion, V.W. asked to proceed by stipulated trial.[5] The court granted the request, and V.W. accordingly stipulated that the government's evidence would include proof of his paternity of both J.W. and D.W., and that he acted as a father for H.T. V.W. additionally stipulated that the government would enter into evidence his August 8, 2000 conviction for child sexual abuse involving H.T. Based on these stipulations and judicial notice of the criminal conviction, the court found that H.T. was neglected within the meaning of D.C.Code § 16-2301(9)(A).[6] Drawing the inference that similarly situated siblings of abused children remained in imminent danger, the court further found that J.W. and D.W. were neglected within the meaning of D.C.Code § 16-2301(9)(E).[7] On February 5, 2002, the court entered a disposition order conditionally releasing J.W. to her mother, S.T. V.W. now appeals this order.[8]

*44 II.
Appellant challenges the trial court's subject matter jurisdiction. He maintains that the trial court lacked jurisdiction to enter the neglect finding against him because the court already had found J.W. neglected according to the terms of S.T.'s stipulation.
"Subject matter jurisdiction concerns the court's authority to adjudicate the type of controversy presented by the case under consideration." In re R.L., 590 A.2d 123, 128 (D.C.1991) (citing 1 RESTATEMENT (SECOND) OF JUDGMENTS § 11 (1982)). Like all questions of law, we review questions concerning the trial court's jurisdiction de novo. See Martin v. District of Columbia Courts, 753 A.2d 987, 991 (D.C. 2000).
We begin with the fundamental premise that the Family Court of the Superior Court has original jurisdiction over child neglect proceedings. See D.C. CODE § 11-1101(13) (2001 & Supp.2003). Once obtained, the division's jurisdiction is preserved until the child becomes twenty-one years of age, unless otherwise terminated by the court. See D.C. CODE § 16-2303 (2001). We have recognized the court's broad authority in civil neglect proceedings to issue a wide variety of remedial orders, including, inter alia, transfer of legal custody, see D.C.CODE § 16-2320(a)(3) (2001), termination of parental rights, see § 16-2320(a)(6), and "such other disposition as is not prohibited by law and as the Division deems to be in the best interest of the child." § 16-2320(a)(5); see generally In re T.W., 732 A.2d 254, 258-59 (D.C.1999) (acknowledging the court's expansive authority). "Our child neglect statute vests the trial court with considerable latitude in crafting a disposition designed to reunite the family while safeguarding the well-being of the child." In re S.L.E., 677 A.2d 514, 522 (D.C.1996) (internal quotation omitted). Because the civil neglect statute is a remedial enactment designed to protect the best interests of children, we have liberally construed the statute to enable the court to carry out its obligations as parens patriae. See In re S.G., 581 A.2d 771, 778 (D.C.1990). Thus, we have permitted the trial court to extend a neglected child's commitment with the Department of Human Services even though the existing commitment order has expired. See In re R.L., 590 A.2d at 128-29 (rejecting the argument that the court's jurisdiction lapses with the government's failure to file a motion to extend commitment or with the expiration of existing commitment order); In re O.A., 548 A.2d 499, 501 (D.C.1988) (holding that trial court's jurisdiction does not lapse with expiration of existing commitment order).
Consistent with these prior decisions, we construe the statutory scheme in aid of its remedial purpose and conclude that the trial court's jurisdiction is sufficiently durable to allow full resolution of all the neglect allegations even after the child has been found to be neglected based on only the allegations with respect to one parent. In the present case, the government filed a single neglect petition alleging that both V.W. and S.T. abused the children. V.W. and S.T. thereafter made separate strategic decisions to take different procedural paths, one stipulating to neglect and the other pursuing a stipulated trial. We see no reason why this tactical divergence should affect the trial court's subject matter jurisdiction to adjudicate the allegations made in the original petition. In the related context of personal jurisdiction, we have said that "[t]he trial court . . . necessarily retains jurisdiction over the custody *45 of the children as long as the underlying neglect petition has not been finally resolved, either by restoration of physical custody of the children to the parent or by termination of the parent's right in the children altogether." In re O.A., 548 A.2d at 500-01 (emphasis added). We similarly conclude that final resolution of the underlying neglect petition also is the touch stone of the trial court's subject matter jurisdiction.
Final resolution of the neglect petition appears to have been the trial court's goal in adjudicating the neglect petition vis a vis appellant. In denying the motion to dismiss for lack of jurisdiction, the trial judge stated that the fact-finding hearing was necessary "in case [V.W.] were to assert his basic rights to custody which he would have but for the government's [neglect] proceeding. . . ."[9]See § 16-2320(a)(3)(C) ("It shall be presumed that it is generally preferable to leave a child in his or her own home."); see also In re L.J.T., 608 A.2d 1213, 1216 (D.C.1992) ("We have repeatedly stressed the existence of a preference toward placing children with their natural parents."). As the government points out, individual judicial findings with respect to each parent are important steps toward subsequent disposition and permanency planning.[10]See D.C. CODE § 16-2354(b)(1) (2001) (making the adjudication of neglect a condition precedent to the filing of a motion to terminate parental rights). Although the trial court is empowered to fashion a disposition over the objection of a parent not found to have been neglectful, see In re L.J.T., 608 A.2d at 1216, we cannot say that the government's interest in facilitating permanency planning including, possibly, termination of parental rights, is de minimis.[11] Findings of neglect with respect to each named party can serve to assist the court in entering the dispositional order. See In re J.M.C., 741 A.2d 418, 424 (D.C.1999) (holding that a trial court considering termination of parental rights may take judicial notice of a neglect adjudication and its underlying findings, provided that the parent was represented by counsel).
Appellant advances the theory that a child may be found neglected only once, and, therefore, once the mother entered into a stipulation of neglect, the trial court could consider his fitness as a parent only at the "dispositional hearing[, which] is separate and apart from an adjudication of neglect." Appellant relies principally on cases explaining that a child need not be abused in order to be neglected within the meaning § 16-2301(9)(B). See, e.g., In re A.H., 590 A.2d 123, 132 (D.C.1991) (stating *46 that the controlling inquiry under § 16-2301(9)(B) is whether the child lacks the statutory requirements for any reason excluding poverty); In re B.C., 582 A.2d 1196, 1198 (D.C.1990) (same). We have said that "the court need not find that the father abused, abandoned or mistreated his children" under this section because the "relevant focus for the court . . . is the children's condition, not the father's culpability." In re B.C., 582 A.2d at 1198. This language, intended to stress that, because the purpose of the statute is to protect the child from harm, the court need not find culpable conduct on the part of a parent to enter findings of neglect under § 16-2301(9)(B), does not mean the court cannot make such findings, particularly under other provisions which do require culpable conduct. Section 16-2301(9)(E), which is the only provision at issue here, textually requires a determination either that a child is in imminent danger of abuse or that a sibling already has been abused. In this case, appellant's culpability has been established beyond a reasonable doubt by his conviction of sexually abusing the child's sibling. Our interpretation of § 16-2301(9)(B) has no relevance, therefore, to the trial court's ability to enter findings of neglect in sequential proceedings under § 16-2301(9)(E).
For similar reasons we also decline to follow appellant's interpretation of In re L.J.T., in which we stated that "under the dispositional portion of the neglect statutes, nothing requires that a finding of neglect must first have been entered against a non-custodial parent before the court may order a disposition over that parent's objection." 608 A.2d at 1215. Contrary to appellant's interpretation, this language does not support (or even address) the contention that the court is prohibited from entering findings of neglect against a custodial parent after other findings of neglect already have been entered under the same petition.
Lastly, as the government emphasizes, the crux of the neglect allegations in this case concerns V.W.'s conduct. The stipulated findings of neglect against S.T. were derivative, that is, S.T. acknowledged that she failed to protect her children from V.W. On these facts, it is difficult to conceive of a reason, much less one rooted in the court's jurisdiction, that would preclude the trial court from addressing the primary allegations contained in the petition. See In re S.S., 821 A.2d 353, 359 (D.C.2003) (holding that any parent, custodial or non-custodial, can be "the subject of an adjudication of neglect if, as a result of the parent's own conduct, the child is subjected to neglect"). Such forthright determination of the facts and attendant legal consequences is part and parcel of the trial court's obligations as parens patriae, and helps fulfill the remedial goals of the statutory scheme. See In re S.G., 581 A.2d at 778; see also In re G.G., 667 A.2d 1331, 1337 (D.C.1995) (stating that "[t]he statute was enacted in order to protect children from the abuse or neglect of a parent and to prevent the parent from harming the child again"). We hold that the trial court possessed subject matter jurisdiction to fully resolve the neglect petition, including the allegations pertaining to V.W.

III.
Beyond challenging the court's jurisdiction, appellant claims that the neglect proceeding violated his right to due process of law. Appellant's due process argument intermingles two theories. He contends that his due process rights were violated when the government proceeded against him in parallel criminal and civil neglect proceedings involving the same factual events. In this regard, he asserts that "due process requires that civil child *47 abuse proceedings against parents be postponed until parallel criminal proceedings are exhausted," presumably so that the parent can address the neglect proceeding without concern for its impact on criminal liability. In a related argument, V.W. contends that his due process rights were impaired when he chose to exercise his Fifth Amendment privilege against self-incrimination by not testifying in the neglect proceeding so as to prevent the government from using his testimony in the pending criminal appeal or any subsequent proceedings flowing therefrom. He argues that he was unable to "tell his side of the story" at the neglect hearing, and therefore was effectively "punished for exercising his Fifth Amendment right."
We have said that constitutional claims not made in the trial court are ordinarily unreviewable on appeal. See, e.g., Thompson v. District of Columbia, 407 A.2d 678, 679 n. 2 (D.C.1979) (declining review of Fifth Amendment due process claim for failure to raise the issue below) (citing Valentine v. United States, 394 A.2d 1374 (D.C.1978); Robinson v. United States, 322 A.2d 271 (D.C.1974); In re W.E.P., 318 A.2d 286 (D.C.1974); Foster v. United States, 290 A.2d 176 (D.C.1972); Williams v. United States, 237 A.2d 539 (D.C.1968)); see also District of Columbia v. Helen Dwight Reid Educ. Found., 766 A.2d 28, 33 n. 3 (D.C.2001) ("as this court has reiterated on innumerable occasions, `[q]uestions not properly raised and preserved during the proceedings under examination. . . will normally be spurned on appeal'") (quoting D.D. v. M.T., 550 A.2d 37, 48 (D.C.1988) (other citation omitted)). We deviate from this general rule "only in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record." Williams v. Gerstenfeld, 514 A.2d 1172, 1177 (D.C. 1986). To invoke this plain error exception, the appellant must show that the alleged error is obvious and "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity" of the proceeding. In re D.S., 747 A.2d 1182, 1188 (D.C.2000) (quoting Watts v. United States, 362 A.2d 706, 709 (D.C.1976) (en banc)).
Appellant neither asked the court for a continuance of the kind urged on appeal, nor did he ever actually invoke his Fifth Amendment privilege against self-incrimination. Rather, appellant attempted to dismiss the neglect petition on the ground previously discussed, that the court lacked jurisdiction to enter findings against him because neglect findings already had been made pursuant to S.T.'s stipulation. The motion to dismiss made no reference to due process nor requested postponement until his then-pending criminal appeal was exhausted. Once the motion to dismiss was denied, V.W. chose to protect his interests by pursuing a stipulated trial and affirmatively sought to proceed with the hearing.[12] We therefore conclude that the *48 issue of postponement was not preserved in the trial court.
With respect to V.W.'s related claim that the neglect disposition effectively punished him for exercising his Fifth Amendment privilege against self-incrimination, we are mindful of the Supreme Court's admonition that the Fifth Amendment is not self-executing. See Roberts v. United States, 445 U.S. 552, 559, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980). Rather, the privilege must be asserted in a manner that fairly brings it to the attention of the trial court, and the court must then resolve it. See id. at 560, 100 S.Ct. 1358 (quoting Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 113, 47 S.Ct. 302, 71 L.Ed. 560 (1927)). It follows that although fear of self-incrimination may motivate a litigant to refrain from taking the witness stand in a civil case, the Fifth Amendment privilege is not automatically implicated every time the choice is made not to testify. Our review arises not from the existence of the privilege, but from its invocation.
We do not believe that appellant was punished for exercising his Fifth Amendment privilege because we see no evidence that he invoked it. In the neglect proceeding appellant was not a criminal defendant but a potential witness. The Fifth Amendment privilege enjoyed by a witness "is narrower than that of a defendant, and extends only to specific questions." Littlejohn v. United States, 705 A.2d 1077, 1083 (D.C.1997) (quoting Harris v. United States, 614 A.2d 1277, 1282 (D.C.1992)). Unlike the criminal defendant, a witness may not refuse to take the witness stand, but rather, must invoke the privilege "as to those specific questions to which his answers would incriminate him." Id. (quoting Wilson v. United States, 558 A.2d 1135, 1141 (D.C.1989)). By virtue of appellant's request for a stipulated trial, no incriminating question was ever posed, nor any incriminating document ever demanded, that would have afforded V.W. even the opportunity to invoke the privilege's protection. See United States v. Mandujano, 425 U.S. 564, 574, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (holding that the privilege does not forbid the asking of questions that likely precipitate incrimination). In the course of discussing the matter of proceeding by stipulated trial, the trial judge recognized the potential Fifth Amendment issue, and inquired whether appellant intended to invoke the privilege, and, consequently, seek further postponement of the neglect proceeding. See note 13, supra. When questioned by the trial judge on the utility of seeking a two-day continuance that would not forestall the *49 proceedings until after appellant's criminal appeal, counsel responded, "[w]ell I think we can resolve the matter in another way." Appellant's alternative resolution was the stipulated trial.
Moreover, even if the record could be read to support appellant's invocation of the Fifth Amendment privilege, it was never tested in the trial court. Because no questions were asked, it is impossible to determine on appeal if the threat of incrimination was real.[13]See Mandujano, 425 U.S. at 575, 96 S.Ct. 1768 (stating that where a person is compelled to testify, the interrogator must honor the privilege or seek "a judicial determination as to the bona fides of the witness'[s] Fifth Amendment claim"); Littlejohn, 705 A.2d at 1083 (stating that when a witness invokes the Fifth Amendment privilege, the court should permit examination of the witness outside the jury's presence and rule on the claim of privilege one question at a time) (quoting Harris, 614 A.2d at 1282). Such determinations in the trial court are necessary predicates to effective appellate review of a witness's Fifth Amendment claim. See generally Littlejohn, 705 A.2d at 1084-85 (reviewing the trial court's rulings on privilege). For these reasons, the assigned error was not properly preserved.
Lastly, we do not believe that this case involves plain error. The neglect hearing was conducted according to the terms of appellant's own stipulation. Appellant received that which he expressly requested of the trial judgea finding based upon his criminal conviction. Appellant's conviction of sexually abusing H.T., on which the court based its neglect finding concerning J.W., required a higher standard of proof than required in the neglect proceeding. Although the issue of sequencing civil child neglect and criminal child sexual abuse cases poses serious questions yet unresolved in this jurisdiction, we do not believe that this case fairly presents the matter. Since nothing in the record suggests that the fairness or integrity of appellant's hearing was jeopardized, we conclude there was no plain error.
Affirmed.
NOTES
[1] V.W. does not challenge his status as H.T.'s custodian. See D.C. CODE § 16-2301(12)(B) (2001) (defining "custodian" as a person or agency, other than a parent or legal guardian, "who is acting in loco parentis"); see also Fuller v. Fuller, 247 A.2d 767, 770 (D.C.1968) (explaining that a person acting "in loco parentis" is one who assumes parental status and discharges parental duties).
[2] Under § 16-2301(9)(B), a neglected child is one "who is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his or her physical, mental, or emotional health, and the deprivation is not due to the lack of financial means of his or her parent, guardian, or custodian." D.C. CODE § 16-2301(9)(B) (2001) (recodified at D.C. CODE § 16-2301(9)(A)(ii) (Supp.2003)).
[3] V.W.'s criminal appeal remains pending as of the time of this opinion.
[4] This point also forms the basis of one of V.W.'s arguments on appeal. See discussion in section II, infra.
[5] Whereas a stipulation of neglect, such as the one entered into here by S.T., concedes the legal conclusion, a stipulated trial admits to the existence of certain facts without conceding a legal outcome. Cf. Glenn v. United States, 391 A.2d 772, 773 (D.C.1978) (describing the trial court as having independently rendered a verdict based on a stipulated record). See generally PRACTICE MANUAL FOR CHILD ABUSE AND NEGLECT CASES IN THE DISTRICT OF COLUMBIA (SECOND) V-13 (1996) (stating that where a parent cannot agree that he or she was neglectful, the party may "stipulate to the facts and let the judge draw the conclusion whether the stipulated facts constitute neglect").
[6] Under § 16-2301(9)(A), a neglected child is one "who has been abandoned or abused by his or her parent, guardian, or other custodian." D.C. CODE § 16-2301(9)(A) (2001) (recodified at D.C. CODE § 16-2301(9)(A)(i) (Supp. 2003)).
[7] Under § 16-2301(9)(E), a neglected child is one "who is in imminent danger of being abused and whose sibling has been abused." D.C. CODE § 16-2301(9)(E) (2001) (recodified at D.C. CODE § 16-2301(9)(A)(v) (Supp. 2003)); see generally In re S.G., 581 A.2d 771, 778 n. 10 (D.C.1990) (concluding that biological half-siblings qualify as "siblings" under § 16-2301(9)(E)).
[8] The trial court's February 5, 2002 disposition order exclusively concerns J.W., and not the other children. Consequently, appellant does not presently appeal the court's findings as to H.T. and D.W.
[9] Indeed, appellant's brief on appeal includes an entire section on the presumption that natural parents should raise their own children, which we read as appellant's assertion of a claim to a liberty interest in maintaining a relationship with his daughter, J.W.
[10] This is true at least in the abstract, although here, J.W. was conditionally released to her mother, where she apparently remains. The jurisdictional challenge mounted by appellant, however, does not turn on such individual facts.
[11] In cases where, as here, one parent stipulates to neglect, it appears that the government's practice is to dismiss allegations against the other parent with the rationale that the court continues to have jurisdiction over the child through the stipulation, and any trial against a second parent would not increase the court's power or provide any greater protection to the child. See PRACTICE MANUAL V-13 (citing In re L.J.T., 608 A.2d at 1213). This agency practice, driven by pragmatic considerations and not obligatory in every case, does not deprive the court of jurisdiction to enter neglect findings against a second parent or custodian named in the petition.
[12] The record cryptically reveals that after the court denied the motion to dismiss, there may have been a request for a two-day continuance. Not only would a two-day continuance have been ineffective to resolve V.W.'s due process concerns, but it is very clear on the record that V.W. elected to forgo any such delay:

[Court]: Except for wanting to rule on [the motion to dismiss], I do understand if you want to wait. [The criminal case] was a trial I gather . . .
[V.W.'s Counsel]: Yes, Your Honor.
[Court]: . . . not a plea, and therefore counsel is totally correct. The Fifth Amendment [r]ights are still intact. And since he may want to appeal, and since you're only talking two days, I don't think that's quite unreasonable. But on the other hand, [counselor], if [V.W.] wants to keep his Fifth Amendment [r]ight, then even after the sentencing he can't say anything. So I guess what my confusion is, is what good it does to wait two days? I mean he waives his Fifth Amendment [r]ight pending appeal too.
[V.W.'s Counsel]: Well I think we can resolve the matter in another way. I think since we've had some discussion, and I think we've agreed on a stipulated trial . . . [including stipulations on] the nature of his fathership . . . and . . . the fact that he was convicted of first degree or second degree child abuse. And that would be the basis upon which we would ask the court to find. . . well the government would ask the court . . .
[Court]: I guess I don't understand. Are you asking me to rule on the fact that he was convicted by a jury on a standard of proof beyond a reasonable doubt?
[V.W.'s Counsel]: Yes.
. . .
[Court]: Is the father . . . I mean have you discussed this thoroughly?
[V.W.'s Counsel]: Yes, we discussed it.
[Court]: Is this what he wishes to do?
[V.W.'s Counsel]: Yes. We talked about this issue of stipulation, and he had agreed to that a long time ago.
[13] We can only speculate whether appellant intended to testify about the facts underlying his conviction of sexually abusing H.T., or whether he wished to persuade the trial court not to draw the inference that, even if he abused H.T., his daughter, J.W., was similarly at risk.